UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YURIY ANAKIN,<br><br>                     Plaintiff,<br><br>       v.<br><br>CONTRA COSTA REGIONAL MEDICAL CENTER, et al.,<br><br>                     Defendants. | Case No. 16-cv-00161-MEJ<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 11 |

## INTRODUCTION

Plaintiff Yuriy Anakin ("Plaintiff") brings this federal civil rights action pursuant to 42 U.S.C. § 1983, based on a blood test after his arrest for driving under the influence. Pending before the Court is Defendants Contra Costa County[1] (the "County") and Deputy W. Armstrong's (collectively, "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. No. 11. Plaintiff filed an Opposition (Dkt. No. 20), and Defendants filed a Reply (Dkt. No. 22). The Court finds this matter suitable for disposition without oral argument and **VACATES** the April 7, 2016 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motion **WITH LEAVE TO AMEND** for the following reasons.

## BACKGROUND

On December 22, 2014, Defendant Officer Lucas Eatchel of the California Highway Patrol ("CHP") arrested Plaintiff on suspicion of driving under the influence of alcohol ("DUI). Compl. ¶ 13, Dkt. No. 1. Plaintiff was then transported to the CHP office in Martinez, where he complained of severe stomach pain related to an ulcerative stomach condition. *Id.* CHP officers transported Plaintiff to the Contra Costa Regional Medical Center ("CCRMC") for medical

---

[1] Defendant Contra Costa County was erroneously sued as the Contra Costa Regional Medical Center. Mot. at 1 n.1.

attention. *Id.* While Plaintiff was at CCRMC, Officer Eatchel obtained a search warrant for Plaintiff's blood, signed by Judge Lois Haight of the Superior Court of Contra Costa County. *Id.* ¶ 14. The warrant specified that Plaintiff's blood was to be drawn "in a reasonable, medically approved manner." *Id.*

Plaintiff alleges that while at CCRMC, despite his verbal refusal and physical resistance to submit to blood testing, Officer Eatchel, along with Deputy Armstrong, Defendant Officer J. Jackson, and Defendants John Does 1 and 2, "used great physical force to restrain and immobilize [him] horizontally against a hospital gurney," while Officer Jackson deployed a TASER to Plaintiff's ribcage area, allowing Defendant phlebotomist Jonathan Young to pierce Plaintiff's right arm and draw four vials of blood. *Id.* ¶ 15. Plaintiff alleges the blood was drawn without his consent, against his strenuous and vocal objections, and "without legal justification in light of the limited scope of the search warrant." *Id.* Plaintiff alleges he "suffered extreme physical pain, extreme mental anguish, and unconscionable violation of personal dignity and bodily integrity" as a result of Defendants' acts. *Id.*

Plaintiff filed the present Complaint on January 11, 2016, alleging two causes of action: (1) violation of his right under the Fourth Amendment of the United States Constitution to be free from unreasonable search and seizure; and (2) battery under California Civil Code section 3281. Compl. ¶¶ 18-23. Defendants now move to dismiss the claims against them. Mot. at 2.

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

Defendants argue the § 1983 claim against the County fails because Plaintiff does not allege any of the elements necessary for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Mot. at 2. As to the Fourth Amendment claim against Deputy Armstrong, Defendants argue it fails because a search warrant authorized the blood draw following Plaintiff's arrest. *Id.* Defendants further argue the claim fails because it does not specify what each defendant did to cause any constitutional violation. *Id.* As to the state law battery claim, Defendants contend it fails because Plaintiff did not file a government tort claim

3

with the County at any time following the alleged incident, and the time to file said claim has passed. *Id.* Finally, Defendants contend Plaintiff's punitive damages claims against the County must be dismissed. *Id.* The Court considers these arguments in turn.

**A.    *Monell* Liability**

Defendants argue Plaintiff's *Monell* claim against the County is fatally deficient because the Complaint alleges a single alleged constitutional violation, which is not sufficient to impose liability under *Monell*. *Id.* at 6. They note the Complaint does not identify any policy, practice, or custom of the County that is alleged to have violated Plaintiff's federal constitutional rights. *Id.* Defendants further argue Plaintiff fails to allege facts establishing a "direct causal link" between a policy or custom and the alleged constitutional violation. *Id.* at 6-7. In response, Plaintiff maintains his *Monell* claim is sufficient because the County "had a policy or custom allowing its Sheriff's Deputies to employ virtually unlimited force, including the use of a TASER, to carry out a search warrant to obtain blood from DUI suspects without their consent." Opp'n at 7.

42 U.S.C. § 1983 provides a cause of action against any person who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution and laws of the United States. Section 1983 is not itself a source of substantive rights, but merely provides a vehicle for a plaintiff to bring federal statutory or constitutional challenges to actions by state and local officials. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Instead, a municipality is liable only if the individual can establish that the municipality "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he [or she] suffered." *Id.* at 694-95; *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007); *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007). To hold a public entity liable, a plaintiff must demonstrate that the unlawful governmental action was part of the public entity's policy or custom, and that there is a nexus between the specific policy or custom and the plaintiff's injury. *Monell*, 436 U.S. at 690-92, 694-95.

"In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must

consist of more than mere 'formulaic recitations of the existence of unlawful policies, conducts or habits.'" *Bedford v. City of Hayward*, 2012 WL 4901434, at *12 (N.D. Cal. Oct. 15, 2012) (quoting *Warner v. Cty. of San Diego*, 2011 WL 662993, *4 (S.D. Cal. Feb.14, 2011)); *see also AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (holding that *Twombly* and *Iqbal* pleading standard also applies to Monell claims). Prior to *Twombly* and *Iqbal*, the Ninth Circuit had held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that individual officers' conduct conformed to official policy, custom, or practice." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988). However, such conclusory allegations no longer suffice and a plaintiff is required to state facts sufficient "to state a claim that is plausible on its face." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 547).

Applying these principles to the facts of this case, the Court finds Plaintiff has failed to state a claim for *Monell* liability under § 1983. As Defendants note, the Complaint alleges a single, isolated alleged constitutional violation, i.e., being deprived of the right to be free from unreasonable search and seizure under the Fourth Amendment, on December 22, 2014. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*. . . ." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Further, Plaintiff has not identified or alleged a policy, practice or custom that may have caused a deprivation of his rights, and he fails to allege that such practice was the "moving force" behind his alleged injury. Without facts alleging a "direct causal link" between a policy or custom and the alleged constitutional violation, a plaintiff cannot state a *Monell* claim. *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997); *see also Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011) (affirming dismissal where complaint "lacked any factual allegations . . . demonstrating that [the] constitutional deprivation was the result of a custom or practice [] or that the custom or practice was the 'moving force' behind [the] constitutional deprivation"); *Tuttle*, 471 U.S. at 823 (holding that "[a]t the very least there must be an affirmative link between the policy and the particular constitutional violation alleged").

Further, to the extent Plaintiff seeks to hold the County liability under a ratification theory,

the Complaint states only that "each of the defendants herein acted in concert with, and gave consent to, ratified, and authorized the acts alleged herein of the remaining actors." Compl. ¶ 11. "To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (citations and quotations omitted). Plaintiff does not allege that the acts were approved through the County's official decision-making channels or made by a "final policy making authority." *Monell*, 436 U.S. at 691, 694-95.

Although his Complaint contains no such allegations, Plaintiff argues the County acted with "deliberate indifference" as to his constitutional rights. Opp'n at 8. He contends the County failed to train its deputies regarding the appropriate constitutional limitations on the degree of force to be used "because it is highly predictable that certain DUI suspects will remain uncooperative with a blood draw even in the face of a search warrant," and it is therefore "expected that certain Deputies will exceed reasonable limitations on force in their zeal to gather evidence against DUI suspects, emoldened [sic] by the search warrant and believing that the search warrant insulates themselves from any such limitations." *Id.*

In *City of Canton v. Harris*, the Court held that a policy of inadequate training or supervision may also give rise to § 1983 municipal liability, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. 378, 388 (1989) (holding the City of Canton liable for failing to train police officers to properly handle medical emergencies). However, although Plaintiff may allege the individual Defendants committed unconstitutional acts as a result of inadequate training, the Supreme Court also clearly stated in *Harris* that "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform[,]" not that a "particular officer may be unsatisfactorily trained[.]" *Id.* Plaintiff's Complaint has made no allegations regarding any official training policy—or lack thereof—within the County or how it caused his injuries. Accordingly, his *Monell* claim must be dismissed, though with leave to amend.

**B.     Fourth Amendment**

Defendants argue Plaintiff cannot state a valid Fourth Amendment claim against Deputy

1  Armstrong because (1) a search warrant authorized the blood draw and the manner in which it was
2  performed was reasonable, and (2) Deputy Armstrong is in any case entitled to qualified
3  immunity.  Mot. at 7-12.

### 1. The Search Warrant and Reasonableness of the Blood Draw

Defendants maintain that Plaintiff's Fourth Amendment claim must fail because the blood draw was performed pursuant to a search warrant that specifically allowed for the blood draw, and Plaintiff does not challenge the warrant's validity.  *Id.* at 8.  They assert that, as Plaintiff fails to allege the blood draw was outside the scope of the search warrant, or that Deputy Armstrong's reliance on the warrant was unreasonable, Plaintiff fails to plead sufficient facts to show Deputy Armstrong violated his Fourth Amendment rights.  *Id.* at 8-9.

In response, Plaintiff argues the search warrant was limited to a blood draw that was to be done in a "reasonable medically approved manner," but "[w]hat actually took place was a barbaric and terrifying violation of bodily integrity as a result of totalitarian state authority run amok."  Opp'n at 9.  Plaintiff notes the blood draw occurred in a hospital emergency room, while medical staff and law enforcement officers held him down and tasered him.  *Id.*

The Fourth Amendment protects persons against "unreasonable searches and seizures."  U.S. Const. amend. IV.  "Requiring an individual to submit to a blood test constitutes a search and seizure under the Fourth Amendment."  *Pankey v. City of Concord*, 2008 WL 793873, at *6 (N.D. Cal. Mar. 24, 2008) (citing *Schmerber v. California*, 384 U.S. 757, 767 (1966)).  "A search conducted in good faith reliance on a facially valid warrant is constitutional as long as the officer's reliance on the magistrate judge's determination that probable cause existed was objectively reasonable, the magistrate judge did not wholly abandon his judicial role, and the officers did not act in bad faith by misleading the magistrate judge."  *Beasley v. Thomas*, 2014 WL 4078235, at *2 (N.D. Cal. Aug. 18, 2014) (citing *United States v. Huggins*, 299 F.3d 1039, 1043-44 (9th Cir. 2002)).  "The Constitution does not require that a warrant specify the method by which a blood sample is to be taken. It requires only that the method of extraction is reasonable."  *Id.*

Plaintiff alleges Officer Eatchel obtained a search warrant which specified that Plaintiff's blood was to be drawn "in a reasonable, medically approved manner."  Compl. ¶ 14.  The draw

1  occurred at CCRMC and was conducted by a phlebotomist. *Id.* ¶ 15.  In general, "the taking of

2  blood by a medical laboratory technician in a hospital . . . is reasonable." *Beasley*, 2014 WL

3  4078235, at *2 (citing *Schmerber*, 384 U.S. at 771-72 (1966)).  However, Plaintiff argues the

4  amount of force used to take the blood was sample was unreasonable because he was also held

5  down against his will and one or more Defendants used a Taser.  Opp'n at 9.

6  "[F]orce may be used to extract a blood sample from a resistant suspect. . . ." *Pankey*,

7  2008 WL 793873, at *6 (citing *Hammer v. Gross*, 932 F.2d 842, 845 (9th Cir. 1991), *superseded

8  by statute on other grounds as stated in Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1230 (9th

9  Cir. 2011)).  Indeed, "[p]hysically restraining a suspect during the extraction of a blood sample, if

10  necessary to effect an otherwise lawful search for and seizure of a blood sample, is not

11  unreasonable within the meaning of the Fourth Amendment." *Ward v. Perry*, 1998 U.S. Dist.

12  LEXIS 4251, at *15 (N.D. Cal. Mar. 26, 1998) (citation unavailable on Westlaw) (citing *Hammer

13  v. Gross*, 884 F.2d 1200, 1208 (9th Cir. 1989), *on reh'g*, 932 F.2d 842 (9th Cir. 1991) ("Although

14  we . . . recognize that the forcible removal of a blood sample from a DUI suspect will virtually

15  always be 'unpleasant, undignified and undesirable,' . . . it will not always be . . .

16  unconstitutional." (quotation omitted))).  Thus, while force may be used, the search may still be

17  unreasonable and in violation of the Fourth Amendment if *excessive* force is employed. *Ellis v.

18  City of San Diego*, 176 F.3d 1183, 1191 (9th Cir. 1999).

19  Accepting Plaintiff's allegations as true and construing them in the light most favorable to

20  him, the Court finds his unreasonable search claim generally has facial plausibility.  Plaintiff's

21  allegation that the individual Defendants used "great force" to restrain him, coupled with the use

22  of a Taser, allows the Court to draw the reasonable inference that one or more Defendants is liable

23  for the misconduct alleged. *See Iqbal*, 556 U.S. at 678.

24  Still, the Court finds dismissal appropriate because Plaintiff fails to allege with the

25  required specificity which Defendant performed what act.  "A person deprives another 'of a

26  constitutional right, within the meaning of section 1983, if he does an affirmative act, participates

27  in another's affirmative acts, or omits to perform an act which he is legally required to do that

28  causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633

(9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).  The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.  *Id.*  Plaintiff accuses at least three Defendant deputies or officers, with two other "Does," of restraining him by using "great physical force," and one of the Defendant officers of using a Taser to his ribcage area.  Compl. ¶ 15.  Plaintiff also names the phlebotomist who "pierce[d]" his arm to draw four vials of blood, as a defendant.  *Id.*  In order for the Court to evaluate both causation and liability, Plaintiff "must follow the instructions of *Leer*," and "must specify which defendant took what action(s)."  *Beasley*, 2014 WL 4078235, at *3.  Plaintiff's lone allegation against Deputy Armstrong lumps the same alleged act of "using great physical force," as against him with those of other Defendants, without factual details to show how each Defendant restrained him, and how much force each used.  These generalized allegations fail to meet the specificity requirements of *Leer*, *Iqbal*, and *Twombly*.  Accordingly, the Court shall grant leave to amend, but Plaintiff must focus on the duties and responsibility of each individual Defendant whose acts or omissions he alleges caused the constitutional deprivation.

        2.     <u>Whether Deputy Armstrong is Entitled to Qualified Immunity</u>

Even if Deputy Armstrong could be held liable, Defendants argue he is entitled to qualified immunity because Deputy Armstrong took no action unrelated to the warrant, and he therefore would not believe he was violating Plaintiff's constitutional rights.  Mot. at 11.  Plaintiff argues Deputy Armstrong is not entitled to immunity because the warrant was not executed in a reasonable manner.  Opp'n at 12.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)).  It "is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation."  *Iqbal*, 556 U.S. at 672 (internal quotation omitted). Qualified immunity purports "to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield

officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). An official is entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 131 S. Ct. at 2080 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[C]ourts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.*

To determine "whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Mattos*, 661 F.3d at 442 (quoting *al-Kidd*, 131 S. Ct. at 2083; some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011). While there need not be "a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2080. Courts do not "define clearly established law at a high level of generality." *Id.* at 2084. Instead, "[t]he inquiry . . . must be undertaken in the light of the specific context of the case, not as a broad general proposition." *Sjurset v. Button*, __ F.3d __ , 2015 WL 7873404, at *5 (9th Cir. Dec. 4, 2015) (internal quotations omitted; alterations in the original). "The subjective beliefs of the actual officer are, of course, irrelevant." *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007).

Plaintiff concedes the blood draw was conducted pursuant to a warrant, which specified "that Plaintiff's blood was to be drawn." Compl. ¶ 14. And Plaintiff alleges that he physically resisted the blood testing. *Id.* ¶ 15. Thus, the allegation that Deputy Armstrong and other Defendants restrained and immobilized Plaintiff for the purposes of a blood draw authorized by a warrant is not unreasonable. *Pankey*, 2008 WL 793873, at *6. However, Plaintiff also alleges Deputy Armstrong restrained him by using "great physical force," while another officer used a Taser. Compl. ¶ 15. As noted above, while force may be used, excessive force may not. *Ellis*, 176 F.3d at 1191. Accepting Plaintiff's allegations as true and construing them in the light most

10

favorable to him, the Court cannot find that Deputy Armstrong would believe he was entitled to use excessive force, and as such he is not entitled to qualified immunity at this time on Plaintiff's Fourth Amendment claim.

### C. Battery

Defendants argue Plaintiff's Second Cause of Action for Battery must be dismissed because he failed to comply with the Government Claims Act.  Mot. at 12.  Plaintiff concedes his battery claim should be dismissed as to the County and Deputy Armstrong.  Opp'n at 13.  Accordingly, the Court DISMISSES Plaintiff's battery claim against the County and Deputy Armstrong WITHOUT LEAVE TO AMEND.

### D. Punitive Damages

Finally, Defendants move to dismiss Plaintiff's request for punitive damages against the County because public entities are immune to punitive damages under California state law, and punitive damages against the County are not otherwise available under § 1983.  Mot. at 15.  Plaintiff concedes that Defendants are correct.  Opp'n at 13.  Accordingly, the Court DISMISSES Plaintiff's claim for punitive damages against the County WITHOUT LEAVE TO AMEND.

## CONCLUSION

Based on the reasons stated above, the Court **GRANTS** Defendant's Motion.  Plaintiff's *Monell* claim against the County and Fourth Amendment claim against Deputy Armstrong are **DISMISSED WITH LEAVE TO AMEND**.  Plaintiff's claims for battery against the County and Deputy Armstrong, and his claim for punitive damages against the County, are **DISMISSED WITHOUT LEAVE TO AMEND**.  Should Plaintiff choose to file an amended complaint consistent with this Order, he must do so by April 14, 2016.

**IT IS SO ORDERED.**

Dated: March 17, 2016

MARIA-ELENA JAMES
United States Magistrate Judge

11