UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YURIY ANAKIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CONTRA COSTA REGIONAL MEDICAL CENTER, et al.,<br><br>　　　　Defendants. | Case No. 16-cv-00161-MEJ<br><br>**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 28 |

## INTRODUCTION

Plaintiff Yuriy Anakin ("Plaintiff") brings this federal civil rights action pursuant to 42 U.S.C. § 1983, based on a blood test after his arrest for driving under the influence. Pending before the Court is Defendant Contra Costa County's[1] (the "County") Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. No. 28. Plaintiff filed an Opposition (Dkt. No. 31), and the County filed a Reply (Dkt. No. 32). The Court finds this matter suitable for disposition without oral argument and **VACATES** the June 16, 2016 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** the County's Motion for the following reasons.

## BACKGROUND

On December 22, 2014, Defendant Officer Lucas Eatchel of the California Highway Patrol ("CHP") arrested Plaintiff on suspicion of driving under the influence of alcohol ("DUI"). First Am. Compl. ("FAC") ¶ 13, Dkt. No. 26. Plaintiff was then transported to the CHP office in Martinez, where he complained of severe stomach pain related to an ulcerative stomach condition. *Id.* CHP officers transported Plaintiff to the Contra Costa Regional Medical Center ("CCRMC")

---

[1] Defendant Contra Costa County was erroneously sued as the Contra Costa Regional Medical Center. Mot. at 1 n.1.

for medical attention. *Id.* While Plaintiff was at CCRMC, Officer Eatchel obtained a search warrant for Plaintiff's blood, signed by Judge Lois Haight of the Superior Court of Contra Costa County. *Id.* ¶ 14. The warrant specified that Plaintiff's blood was to be drawn "in a reasonable, medically approved manner." *Id.*

Plaintiff alleges that while at CCRMC, despite his verbal refusal and physical resistance to submit to blood testing, Officer Eatchel, along with Defendant Officer J. Jackson and Defendants John Does 1 and 2, "used great physical force to restrain and immobilize Plaintiff horizontally against a hospital gurney by forcing Plaintiff's wrists and ankles into 'four point restraints,' with each of the above-named defendants holding and manipulating one of Plaintiff's limbs." *Id.* ¶ 15. Defendant Deputy W. Armstrong arrived on the scene and joined Officers Eatchel and Jackson in physically restraining Plaintiff by "wrestling Plaintiff's arms and legs flush against the gurney, with each of these three defendants forcefully holding and manipulating one or more of Plaintiff's limbs with the understanding that a non-consensual blood draw was about to occur and that a TASER™ was about to be deployed by Defendant OFFICER J. JACKSON to effectuate said blood draw." *Id.* Officer Jackson then deployed the taser, "delivering millions of volts of electricity to Plaintiff's ribcage area," thereby allowing Defendant Phlebotomist Jonathan Young "to pierce Plaintiff's right arm and draw four (4) vials of blood, all without Plaintiff's consent, against Plaintiff's strenuous and vocal objections, and without legal justification in light of the limited scope of the search warrant." *Id.* As a result of these acts, Plaintiff alleges he "suffered extreme physical pain, extreme mental anguish, and unconscionable violation of personal dignity and bodily integrity" as a result of Defendants' acts. *Id.* ¶ 19.

Plaintiff further alleges the County "has no official training policy regarding the limitations on a Deputy's authority to use force during the execution of a blood draw pursuant to a search warrant specifying . . . that the blood is to be drawn 'in a reasonable, medically approved manner.'" *Id.* ¶ 16. Plaintiff contends that if Deputy Armstrong received appropriate training, "he would have realized that his co-defendants were breaking the law and he would not have participated in the group effort . . . to immobilize and TASER™ Plaintiff in a hospital emergency room, and the TASER'ing and blood draw would thus not have been possible." *Id.* Thus, Plaintiff

alleges the County's "lack of an appropriate training policy was a substantial cause of, and the moving force behind," his injuries. *Id.* Finally, Plaintiff alleges that County Sheriff's Deputies "routinely fail to observe any limitations on the amount of physical force permitted when drawing blood from an uncooperative suspect, and that is therefore likely, given the quantity of D.U.I. arrests and the common search warrant language, that many other individual's rights have been violated similarly to Plaintiff's." *Id.* ¶ 17.

Plaintiff filed his initial Complaint on January 11, 2016, alleging two causes of action: (1) violation of his right under the Fourth Amendment of the United States Constitution to be free from unreasonable search and seizure; and (2) battery under California Civil Code section 3281. Compl. ¶¶ 18-23, Dkt. No. 1. The County and Deputy Armstrong moved to dismiss the claims against them, arguing the § 1983 claim against the County failed because Plaintiff did not allege any of the elements necessary for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). First Mot. to Dismiss at 2, Dkt. No. 11. As to the Fourth Amendment claim against Deputy Armstrong, they argued it failed because (1) a search warrant authorized the blood draw following Plaintiff's arrest, and (2) it does not specify what each defendant did to cause any constitutional violation. *Id.* As to the state law battery claim, the County and Deputy Armstrong argued the claim failed because Plaintiff did not file a government tort claim with the County at any time following the alleged incident, and the time to file said claim has passed. *Id.* Finally, the County and Deputy Armstrong also sought dismissal of Plaintiff's punitive damages claims against the County. *Id.*

On March 17, 2016, the Court granted the County and Deputy Armstrong's Motion with leave to amend as to certain claims. Order, Dkt. No. 23. The Court dismissed Plaintiff's battery claim without leave to amend based on his failure to comply with the California Government Tort Claims Act. *Id.* at 11. As public entities are immune to punitive damages under California state law, and punitive damages against the County are not otherwise available under § 1983, the Court also dismissed Plaintiff's claim for punitive damages against the County without leave to amend. *Id.* As to Plaintiff's *Monell* claim, the Court found Plaintiff had failed to state a claim because he "ha[d] not identified or alleged a policy, practice or custom that may have caused a deprivation of

3

his rights, and he fail[ed] to allege that such practice was the 'moving force' behind his alleged injury." *Id.* at 5. Accordingly, the Court dismissed this claim with leave to amend. *Id.* at 6. As to Plaintiff's Fourth Amendment claim, the Court found his unreasonable search claim had facial plausibility, but dismissal was appropriate because he failed to allege with the required specificity which defendant performed what act. *Id.* at 8-9.

Plaintiff filed his First Amended Complaint on April 13, 2016, again alleging (1) violation of his right under the Fourth Amendment of the United States Constitution to be free from unreasonable search and seizure; and (2) battery under California Civil Code section 3281.[2] FAC ¶¶ 20-25. The County now moves to dismiss the *Monell* claim against it.

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

---

[2] Although Plaintiff does not state which named Defendant(s) he brings his battery claim against, there appears to be no dispute that it cannot be brought against the County and Deputy Armstrong based on the Court's previous Order.

1    In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as
2    true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*,
3    551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In
4    addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v.
5    Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

   If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

The County argues Plaintiff's *Monell* claim fails once again because he does not allege a County policy, custom, or practice that caused the alleged Fourth Amendment violation. Mot. at 6. The County further argues that, although Plaintiff asserts a *Monell* theory based on lack of a training policy, he fails to allege any facts showing that the deficiency in training actually caused the alleged conduct, or that any failure to train was so inadequate as to constitute deliberate indifference. *Id.* at 7-8.

In response, Plaintiff maintains his *Monell* claim is sufficient because the County "had a policy or custom to refrain from interfering with, and to allow[] Sheriff's Deputies to employ virtually unlimited force, including the use of a TASER, to carry out a search warrant to obtain blood from DUI suspects without their consent." Opp'n at 7. Plaintiff also argues there is "ample support" for a claim based on inadequate training "because it is highly predictable that certain DUI suspects will remain uncooperative with a blood draw even in the face of a search warrant. Under those circumstances, it is to be expected that certain Deputies will exceed reasonable limitations

on force in their zeal to gather evidence against DUI suspects, emboldened by the search warrant and believing that the search warrant insulates themselves from any such limitations." *Id.* at 7-8.

### A. Legal Standard

42 U.S.C. § 1983 provides a cause of action against any person who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution and laws of the United States. Section 1983 is not itself a source of substantive rights, but merely provides a vehicle for a plaintiff to bring federal statutory or constitutional challenges to actions by state and local officials. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Instead, a municipality is liable only if the individual can establish that the municipality "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he [or she] suffered." *Id.* at 694-95; *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007); *Galen v. Cty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007). To hold a public entity liable, a plaintiff must demonstrate that the unlawful governmental action was part of the public entity's policy or custom, and that there is a nexus between the specific policy or custom and the plaintiff's injury. *Monell*, 436 U.S. at 690-92, 694-95.

"In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere 'formulaic recitations of the existence of unlawful policies, conducts or habits.'" *Bedford v. City of Hayward*, 2012 WL 4901434, at *12 (N.D. Cal. Oct. 15, 2012) (quoting *Warner v. Cty. of San Diego*, 2011 WL 662993, *4 (S.D. Cal. Feb. 14, 2011)); *see also AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (holding that *Twombly* and *Iqbal* pleading standard also applies to *Monell* claims). Prior to *Twombly* and *Iqbal*, the Ninth Circuit had held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that individual officers' conduct conformed to official policy, custom, or practice." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988). However, such conclusory allegations no longer suffice and a plaintiff is required to state facts sufficient "to state a claim that is plausible on its face." *Iqbal*,

556 U.S. at 663 (citing *Twombly*, 550 U.S. at 547).

**B.     Application to the Case at Bar**

As a preliminary matter, although Plaintiff argues his allegations support a *Monell* claim based on both a policy or custom allowing officers "to employ virtually unlimited force, including the use of a TASER, to carry out a search warrant to obtain blood from DUI suspects without their consent," Opp'n at 7, he makes no such allegations in his First Amended Complaint. The Court previously warned Plaintiff that "'[i]n order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere formulaic recitations of the existence of unlawful policies, conducts or habits.'" *Anakin v. Contra Costa Reg'l Med. Ctr.*, 2016 WL 1059428, at *3 (N.D. Cal. Mar. 17, 2016) (quoting *Bedford*, 2012 WL 4901434, at *12). Despite this warning, Plaintiff fails to identify any specific policies or customs in his FAC. "While the Court recognizes the inherent difficulty of identifying specific policies absent access to discovery, that is nonetheless the burden of plaintiffs in federal court." *Roy v. Contra Costa Cty.*, 2016 WL 54119, at *4 (N.D. Cal. Jan. 5, 2016); *see also Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011) (affirming dismissal where complaint "lacked any factual allegations . . . demonstrating that [the] constitutional deprivation was the result of a custom or practice [] or that the custom or practice was the 'moving force' behind [the] constitutional deprivation"); *City of Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985) (holding that "[a]t the very least there must be an affirmative link between the policy and the particular constitutional violation alleged"). Thus, the Court finds Plaintiff fails to set forth sufficient allegations of a specific policy or custom.

Instead, Plaintiff focuses on a lack of training. The Supreme Court has held that inadequate training may constitute a "policy" under *Monell* that gives rise to municipal liability. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1988); *Long v. Cty. of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long*, 442 F.3d at 1186. A plaintiff alleging a failure to train claim must show: (1) he was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely

to come into contact;" and (3) his constitutional injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007); *Lee v. City of L.A.*, 250 F.3d 668, 681 (9th Cir. 2001). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 389; *Long v. City & Cty. of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007).

A municipality is "deliberately indifferent" when the need for more or different action, "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390; *Lee*, 250 F.3d at 682. A "pattern of tortious conduct," despite the existence of a training program, or "highly predictable" constitutional violations due to a "failure to equip law enforcement officers with specific tools to handle recurring situations," are circumstances in which liability for failure to train may be imposed. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407-10 (1997); *Long*, 442 F.3d at 1186-87. However, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." *City of Canton*, 489 U.S. at 391; *see also Merritt v. Cty. of L.A.*, 875 F.2d 765, 770 (9th Cir. 1989); *McDade v. West*, 223 F.3d at 1135, 1141 (9th Cir. 2000).

Plaintiff alleges (1) the County "has no official training policy regarding the limitations on a Deputy's authority to use force during the execution of a blood draw," (2) the County's Sheriff's Deputies "routinely fail to observe any limitations on the amount of physical force permitted when drawing blood from an uncooperative suspect," (3) if Deputy Armstrong received proper training, he would not have participated with the other officers, and (4) "given the quantity of D.U.I. arrests and the common search warrant language, that many other individual's rights have been violated similarly to Plaintiff's." FAC ¶¶ 16-17. These allegations are plausible and are sufficient to put the County on notice of the specific training policies that allegedly caused the constitutional violation at issue. *See Bass v. City of Fremont*, 2013 WL 891090, at *4 (N.D. Cal. Mar. 8, 2013)

8

1   (finding *Monell* claim based on allegations of officers "engaged in a pattern and practice of using
2   unnecessary and excessive force and falsely reporting crimes, and that the municipal entities
3   demonstrated deliberate indifference to this pattern and practice of constitutional violations" found
4   to be "plausible and . . . sufficient to give the municipal entities notice of the specific policies,
5   customs, and practices that are alleged to have caused the deprivation of Bass's rights"); *Howard
6   v. City of Vallejo*, 2013 WL 6070494, at *4 (E.D. Cal. Nov. 13, 2013) (allegations that city failed
7   to discipline officers for prior misconduct was "sufficient to give the City fair notice of plaintiff's
8   claim that the City has a policy of deliberate indifference to a pattern and practice of excessive use
9   of force and other violations of the constitutional rights of citizens by City police officers,
10  particularly minority citizens, that is manifested in its failure to discipline or retrain officers
11  involved in such incidents"); *Johnson v. Shasta Cty.*, 83 F. Supp. 3d 918, 932 (E.D. Cal. 2015);
12  *see also Flores v. Cty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014) ("Flores must allege facts to
13  show that the County and Baca 'disregarded the known or obvious consequence that a particular
14  omission in their training program would cause [municipal] employees to violate citizens'
15  constitutional rights.'" (quoting *Connick v. Thompson*, __ U.S. __, 131 S. Ct. 1350, 1360 (2011)).

16         The County argues Plaintiff's *Monell* claim must fail because he focuses on the December
17  22, 2014 incident and does not allege facts establishing a pattern of similar constitutional
18  violations.  Reply at 3.  In general, "[p]roof of a single incident of unconstitutional activity is not
19  sufficient to impose liability under *Monell*. . . ." *Tuttle*, 471 U.S. at 823-24; *Trevino v. Gates*, 99
20  F.3d 911, 918 (9th Cir. 1996) ("The custom must be so persistent and widespread that it
21  constitutes a permanent and well settled city policy. . . . Liability for improper custom may not be
22  predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient
23  duration, frequency and consistency that the conduct has become a traditional method of carrying
24  out policy." (internal quotations omitted)); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th
25  Cir. 1989) ("A plaintiff cannot prove the existence of a municipal policy or custom based solely
26  on the occurrence of a single incident of unconstitutional action by a non-policymaking
27  employee.").

28         Although Plaintiff focuses on his own blood draw, his FAC alleges that the defendant

9

Officers violated his rights based on a lack of training that was inadequate as to all officers. In other words, Plaintiff does not allege these policies applied only to Armstrong; instead, he maintains they apply to all officers. FAC ¶¶ 16-17. Such allegations can constitute a plausible claim. For instance, in *Dasovich v. Contra Costa County Sheriff Department*, the plaintiff alleged the county defendant "developed and maintained training policies that led to the improper use of canines by individual officers, including the release of canines to bite on individuals when it is not objectively reasonable to do so." 2014 WL 4652118, at *5 (N.D. Cal. Sept. 17, 2014) (internal quotations and citation omitted). Although he made this allegation generally, his allegations focused solely on the training of an individual deputy. *Id.* Still, the court allowed the plaintiff's *Monell* claim to proceed, finding "the language of Plaintiff's FAC can be interpreted to apply to all individuals that are trained using said policies." *Id.* Although a single incident is ultimately insufficient to establish liability, a plaintiff can survive a motion to dismiss by stating a plausible *Monell* claim based on failure to train, so long as the allegations apply to all individuals that are trained using the policy at issue. *Id.* Thus, under the liberal pleading standard of Rule 8(a)(2) and drawing the reasonable inference that one or more Defendants is liable for the misconduct alleged, the Court finds the First Amended Complaint contains sufficient allegations to give fair notice to the County and to enable it to defend against the allegations effectively.

Accordingly, the Court must deny the County's Motion to Dismiss.

## CONCLUSION

Based on the reasons stated above, the Court **DENIES** the County's Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: May 18, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge